**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RAYDEL MAREN MOREJON,

Petitioner,

vs.

JOHN MATTOS, *et al.*,[1]

Respondents.

Case No.: 2:26-cv-00427-GMN-BNW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Raydel Maren Morejon's First Amended Petition for Writ of Habeas Corpus, (ECF No. 9). Federal Respondents, Todd Blanche and the Department of Homeland Security ("DHS"), filed a Response, (ECF No. 11), to which Petitioner filed a Reply, (ECF No. 15).[2]

For the reasons discussed below, the Court GRANTS the First Amended Petition and orders Petitioner's immediate release.

## I. <u>BACKGROUND</u>

Petitioner Raydel Maren Morejon is a citizen of Cuba who entered the United States on July 12, 2022, without inspection. (First Am. Pet. 2:5–6, ECF No. 9); (Form I-213 at 2, Ex. A to Resp., ECF No. 11-2). Petitioner was paroled into the United States after a brief detention by Immigration and Customs Enforcement ("ICE"). (First Am. Pet. 1:4–5); (Form I-213 at 3, Ex. A to Resp.). He lived in Las Vegas, Nevada with his girlfriend and their young children

[1] Pursuant to Federal Rule of Civil Procedure 25(d), U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi. The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

[2] Respondent John Mattos, Warden of Nevada Southern Detention Center, filed a Response to Petitioner's First Amended Petition for Writ of Habeas Corpus, asserting that he has no independent authority to release Petitioner and takes no position on the Petition's merits. (*See generally* Facility Resp't's Resp., ECF No. 12).

until he was arrested on November 24, 2024. (First Am. Pet. 3:11–12). Petitioner was arrested by the Las Vegas Metropolitan Police Department following an alleged theft of approximately $5,300 worth of women's clothes from a Dick's Sporting Goods Store. (Declaration of Arrest Report, Ex. C to Resp., ECF No. 11-4). The initial charge was for "Comprehensive Theft, Value $5,000 Or More But Less Than $25,000," a Class C Felony under Nevada Revised Statute ("NRS") 205.832, 205.835. (Criminal Complaint, Ex. 1 to First Am. Pet., ECF No. 9-2). On August 11, 2025, he pleaded guilty to a lesser offense of "Trespass, not amounting to burglary," a misdemeanor offense. (Disposition Notice and Judgment, Ex. 2 to First Am. Pet., ECF No. 9-3).

On August 13, 2025, Petitioner was transferred to ICE custody and placed in removal proceedings. (Form I-213 at 3, Ex. A to Resp.). The parties do not dispute that Petitioner was not provided an initial custody determination or a bond hearing. On October 31, 2025, the Las Vegas Immigration Court issued a removal order which Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). (Removal Order, Ex. E to Resp., ECF No. 11-6); (Filing Receipt for Appeal, Ex. F to Resp., ECF No. 11-7). The BIA appeal is currently pending. (First Am. Pet. 3:22). Petitioner requested a custody redetermination hearing in Immigration Court. (Redetermination Order, Ex. G to Resp., ECF No. 11-8). The Immigration Judge ("IJ") denied Petitioner a bond hearing stating that he was subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(ii) because he was originally charged with burglary. (*Id.*). The IJ additionally relied on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), as an independent jurisdictional justification for the mandatory detention without a bond hearing. (*Id.*). Petitioner has remained in DHS custody since August 13, 2025, without a bond hearing.

///

///

///

## II. LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is “available to every individual detained within the United States.” *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). “The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.” *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that they are in custody in violation of the Constitution or federal law. 28 U.S.C.A. § 2241(c)(3). A district court’s habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Statutory Detention Scheme

Under the Immigration and Nationality Act (“INA”), 8 U.S.C. §§ 1101, *et seq.*, two statutory provisions generally govern the government’s authority to civilly detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226. In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court explained that § 1225 generally governs “at the Nation’s borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.” *Id*. at 287. In contrast, § 1226 “generally governs the process of arresting and detaining” noncitizens already “inside the United States.” *Id*. at 288.

The Ninth Circuit recently upheld this distinction in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). In *Rodriguez Vazquez*, the Ninth Circuit analyzed the statutory text, history, and purpose of §§ 1225(b) and 1226 and concluded that the statutory scheme “subject[ed] unadmitted aliens entering the United States at the border to § 1225(b)(2)(A), and unadmitted aliens present in the interior of the country to § 1226.” *Id.* at 1193. This

interpretation is "consistent with longstanding practice and the Supreme Court's description of the detention regime in *Jennings*." *Id.* at 1175.

8 U.S.C. § 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *See Jennings*, 583 U.S. at 289; *Rodriguez Vazquez*, 183 F.4th at 1168. Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287; *see also Rodriguez Vazquez*, 183 F.4th at 1168–69. Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287 (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id*. (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id*. Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention. Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Jennings*, 583 U.S. at 287.

8 U.S.C § 1226 governs detention of noncitizens who are already present in the United States but are subject to full, standard removal proceedings. *See Jennings*, 583 U.S. at 288–89 ("U.S. immigration law authorizes the Government to detain . . . certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)"); *see also Rodriguez Vazquez*, 183 F.4th at 1172. Section 1226 "distinguishes between two different categories of [noncitizens]." *Id*. at 288. Noncitizens under § 1226(a) are subject to discretionary detention, while noncitizens under § 1226(c) are subject to mandatory detention.

*Id*. at 288–89. § 1226(c) makes detention mandatory for noncitizens who have committed certain crimes.

The Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025) ("LRA"), added a new subparagraph: 8 U.S.C. § 1226(c)(1)(E). That new subparagraph makes detention mandatory for noncitizens who satisfy two conditions: the noncitizen must be (1) "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title," and (2) charged with certain enumerated theft crimes or violent offenses. 8 U.S.C. § 1226(c)(1)(E). Detention is mandatory under the LRA, even if a noncitizen has not been convicted of the enumerated offenses. Specific to this case, 8 U.S.C. § 1226(c)(1)(E)(ii) makes detention mandatory for a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, [or] shoplifting . . . ." There is no provision within § 1226(c) broadly nor in subparagraph (c)(1)(E) that attempts to provide retroactive effect to its detention scheme.

## III. <u>DISCUSSION</u>

Petitioner's argument contains three parts. First, he argues that he cannot be lawfully detained under 8 U.S.C. § 1225(b)(2)(A), as the Federal Respondents suggest, because Petitioner is not "seeking admission." Thus, his detention falls under 8 U.S.C. § 1226(a). If he is detained under 8 U.S.C. § 1226(a), his detention without a prior bond hearing violates the INA and is unconstitutional. Second, if he is instead subject to mandatory detention under 8 U.S.C. § 1226(c), the detention is unconstitutional and violates the INA because it would require the statute to be applied retroactively to a 2024 arrest on a later dismissed charge of felony "comprehensive theft." Third and finally, regardless of the detention scheme, Petitioner contends that his prolonged detention of over 13 months without a constitutionally adequate bond hearing or any pre-deprivation process violates his due process rights. Respondents assert

that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) and that no due process violation occurred in his arrest and detention. (*See generally* Resp., ECF No. 11).

**A. Violation of INA**

The central issue in this case is which statutory authority governs Petitioner's detention. Petitioner contends that his detention is governed by § 1226(a), whereas Respondents argue that Petitioner's detention is governed by § 1225(b)(2)(A).

Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.SC. § 1225(a)(1). While "applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)," they are subject to mandatory detention under both provisions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). There is no statutory right to a bond hearing for noncitizens detained under § 1225(b). *Id.* at 296–97.

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion whether to detain or release. *Rodriguiez Diaz v. Garland*, 53 F.4th 1189, 1106 (9th Cir. 2022) (citing *Jennings*, 583 U.S. at 288). It provides that a detainee may request "a bond hearing before an immigration judge at any time before a removal order becomes final" and "an additional bond hearing whenever he experiences a material change in circumstances." *Id.* at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). Section 1226(a) also mandates that the government is required to obtain a warrant before the noncitizen's arrest and conduct an initial custody determination, among other

procedural protections. *See id.* at 1196 (citing 8 C.F.R. § 236.1(c)(8)); *see also* 8 U.S.C. § 1226(a).

Respondents argue that Petitioner is an "applicant for admission" because when he was detained, he was present in the United States without being admitted. (*See generally* Resp.). However, as explained, this interpretation of § 1225(b)(2)(A) was recently rejected by the Ninth Circuit. *See generally Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026).[3] Specifically, the Ninth Circuit held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Id.* at 1165.[4] Here, there is no dispute that Petitioner was detained in the interior of the United States after residing here for approximately 3 years. (First Am. Pet. 3:7–19); (Form I-213 at 3, Ex. A to Resp.). Accordingly, Petitioner was entitled to the statutory rights conferred by Congress under § 1226(a), and his continued detention without that provision's procedural protections violates the INA.

**B. Laken Riley Act**

If Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(ii), the LRA, as suggested by the IJ in their Order, (*see* Redetermination Order, Ex. E to Resp., ECF No. 11-6), Petitioner argues that his detention is unconstitutional as applied because it is based on a later dismissed arrest that predates the LRA. (First Am. Pet. 8:13–11:6). Federal Respondents have not advanced any argument in their Response that the LRA applies retroactively. Courts in this District and beyond have consistently determined that the LRA

---

[3] Six other circuit courts have rejected Respondents' interpretation of § 1225(b)(2)(A). *See generally Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Guerrero Orellana v. Moniz*, 188 F.4th 1 (1st Cir. 2026).

[4] Prior to that ruling, Respondents' interpretation of § 1225(b)(2)(A) was repeatedly rejected by this Court and other courts in this District. *See, e.g.*, *Jacobo-Ramirez v. Mullin*, 834 F. Supp. 3d 1073, 1087 (D. Nev. 2026) (collecting cases).

should not be applied retroactively to make detention mandatory for persons who fall under its provisions based on a charge, arrest, conviction, or admission to a crime prior to its enactment on January 29, 2025. *See Hermosillo-Bajaras v. Mattos*, No. 2:26-cv-00274-JAD-DJA, 2026 WL 1383263, at *1 (D. Nev. May 18, 2026); *Alvarado v. Mattos*, No. 2:26-cv-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026); *Lopez Lopez v. Warden*, No. 1:26-cv-03556-DAD-CKD, 2026 WL 1346694, at *2 (E.D. Cal. May 14, 2026) (collecting cases). Given the backdrop of cases similarly finding that the LRA does not apply retroactively and the Federal Respondents' failure to advance any argument on this point, the Court finds that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(ii) for his 2024 arrest.[5]

**C. Due Process**

Petitioner lastly asserts that his detention violates the Due Process Clause of the Fifth Amendment. (First Am. Pet. 15:4–18:10). Federal Respondents argue that no such due process violations occurred because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Resp. 20:11–26:20).

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation

---

[5] Because the Court finds that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(ii) nor 8 U.S.C. § 1225(b)(2), the jurisdictional considerations in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) do not apply and cannot provide an independent justification for the denial of a bond hearing. *See Jacobo-Ramirez v. Mullin*, 834 F. Supp. 3d 1073, 1123 (D. Nev. 2026) (determining that *Matter of Yajure Hurtado* is "unlawful under the Immigration and Nationality Act and its implementing regulations").

proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Moreover, physical freedom "lies at the heart" of the Due Process Clause, *see Zadvydas*, 553 U.S. at 690 (citation omitted), and "notice and an opportunity to be heard" constitute the "fundamental features of due process[.]" *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Miranda v. Garland*, 34 F.4th 338, 358 (4th Cir. 2022)). Thus, it follows that when the government subjects noncitizens to civil detention without supplying these fundamental procedural safeguards, their actions violate the Due Process Clause.

As another Court in this District has explained, § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty. *See Jacobo-Ramirez v. Mullin*, 843 F. Supp. 3d 1073, 1091 (D. Nev. 2026) (quoting *Rodriguez Diaz*, 53 F.4th at 1196). "These protections include, but are not limited to, four key procedures for the purposes of this analysis: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) at the outset of detention, a noncitizen detained under this provision receives an initial custody determination by the agency; and (4) the noncitizen then has an ability to appeal said custody determination—i.e., receive a custody redetermination (bond) hearing before an immigration judge ("IJ")." *Rios-Rodriguez v. Blanche*, No. 2:26-cv-02117-RFB-MDC, 2026 WL 2280924, at *4 (D. Nev. Aug. 7, 2026) (citing *Rodriguez Diaz*, 53 F.4th at 1201–02). Conversely, § 1225(b)(2)(A) requires no comparable set of procedures.

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors":

(1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Despite Federal Respondents' suggestion that the Supreme Court has declined to use the *Mathews v. Eldridge* test in immigration proceedings citing *Demore v. Kim*, 538 U.S. 510 (2003), this Court finds that the use of such a test to analyze due process concerns is appropriate here. *Demore* dealt with mandatory detention under 8 U.S.C. § 1226(c), *see generally, id.*, while the Petitioner in this case has been detained under 8 U.S.C. § 1226(a), which provides different procedural protections. Additionally, the Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id*. at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id*. at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

**1. Private Interest**

The first *Mathews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most

elemental of liberty interests." *Hamdi*, 542 U.S. at 529. This interest is especially weighty here, considering the lack of process accorded to Petitioner despite the process available to him at the outset of his detention. *See Rodriguez Diaz*, 53 F.4th at 1208 ("[I]n evaluating [a noncitizen's] interests under the first prong of [] *Mathews*, . . . [courts] must also consider the process [they] received . . . [and] the further process that was available to [them] . . ."). Unlike the noncitizen in *Rodriguez Diaz*, who was afforded the full breadth of procedural protections under § 1226(a), Petitioner was improperly categorized and detained under either § 1225(b)(2)(A) or § 1226(c), which by statute, afford no pre-deprivation process at all.

**2. Risk of Erroneous Deprivation**

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation of Petitioner's liberty is high under the government's interpretation of § 1225(b)(2)(A), which accords its immigration officials "sole, unguided, and unreviewable discretion to detain" noncitizens like Petitioner "without any individualized showing that their detention is warranted, nor any process for [noncitizens] to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025).

That broad discretion stands in stark contrast to the procedural safeguards mandated by Congress in § 1226(a), which protect against the erroneous deprivation of liberty. *See Rodriguez Diaz*, 53 F.4th at 1210. First, a noncitizen cannot be detained without notice of the basis of their detention. The basis for detention is communicated via a notice to appear ("NTA"), which must be signed and served by a designated immigration officer. *See* 8 U.S.C. § 1229(a)(1); 8 C.F.R. §§ 239.1, 1003.15(b)(1). Second, a noncitizen cannot be arrested without an administrative warrant. *See* 8 C.F.R. § 236.1(b). Third, when a noncitizen is arrested under § 1226(a), an immigration official must make an "initial custody determination," wherein the

noncitizen has a *pre-deprivation* opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceedings." *Rodriguez Diaz*, 53 F.4th at 1196; 8 C.F.R. §§ 236.1(c)(8), (g).

Fourth, a noncitizen has the right to appeal that initial custody determination to an IJ based on individualized evidence, wherein the IJ will order release on bond if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Rodriguez Diaz*, 53 F.4th at 1197. At this hearing, the noncitizen bears the evidentiary burden of overcoming the presumption of detention. *See In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to disprove dangerousness or flight risk at a bond hearing before an IJ). "That is why, when a noncitizen seeks to challenge their detention through a custody *redetermination* hearing (*i.e.*, a bond hearing), the noncitizen has already been provided notice of the legal bases—*at minimum*—underlying the government's custody determination, such that the hearing presents an opportunity to disprove and rebut the agency's determination." *Rios-Rodriguez*, 2026 WL 2280924, at *7 (citing 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added)). Operating together, "[t]hese procedures ensure[] that the risk of an erroneous deprivation would be relatively small." *Rodriguez Diaz*, 53 F.4th at 1210.

Here, Petitioner was not afforded these procedural protections. Specifically, there is no evidence in this case that Respondents obtained an arrest warrant or made an initial custody determination. In fact, the only custody determination in the record is the redetermination from January 30, 2026, where the IJ determined that mandatory detention was appropriate (*See* Redetermination Order, Ex. E to Resp). Due to the lack of procedural protections that should

have been provided to Petitioner under 8 U.S.C. § 1226(a) and the implementing regulations, the Court concludes that risk of erroneous deprivation is substantial.

**3. Government's Interest**

The third and final *Mathews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, the government has shown its ability to satisfy those interests through the statutory scheme of § 1226(a) for years. *Rios-Rodriguez*, 2026 WL 2280924 at *9. Moreover, those interests are ultimately *served*, not hindered, by the procedural protections of § 1226(a). Specifically, § 1226(a)'s procedural protections reduce the fiscal and administrative burden of civil detention by ensuring that only noncitizens who are actually dangerous or a flight risk are detained. *See Escobar Salgado*, 809 F. Supp. 3d at 1162; *see also Jacobo-Ramirez*, 834 F. Supp. 3d, at 1119 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted). Accordingly, the Court concludes that the third *Mathews* factor also weighs in favor of Petitioner.

For the foregoing reasons, the Court finds that all three of the *Mathews* factors weigh heavily in favor of Petitioner, and therefore his continued detention under either § 1225(b)(2)(A) or § 1226(c) violated his rights under the Due Process Clause of the Fifth Amendment.

///

///

**D. Remedy**

Because the Court finds that Petitioner has been subjected to erroneous detention in violation of his statutory rights and due process rights under the Fifth Amendment, the Court next determines the appropriate remedy for those violations. *See Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . ."); *see also Brown v. Davenport*, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243) (same). Petitioner asks this Court to order his immediate release. (First Am. Pet. 18:13–14). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

As explained above, the Court concludes that Federal Respondents did not obtain a warrant before arresting petitioner and did not conduct an initial custody determination at the outset of Petitioner's detention. It thus finds that Petitioner's detention has been "unlawful from its inception because ICE detained [him] under the wrong statute and without affording [him] any notice or process whatsoever, much less the procedures due under Section 1226(a)." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026) (ordering a noncitizen's release on this basis and finding that a subsequent "bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]"). "In the absence of an initial custody determination—which establishes a lawful basis for detention in the first instance—a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Rios-Rodriguez*, 2026 WL 2280924 at *10 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Respondents cannot cure these violations by conducting a *post-hoc* bond hearing; where physical liberty is at stake, some form of *pre-deprivation* process, like the procedural protections afforded by § 1226(a), is necessary. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). Indeed, ordering a bond hearing rather than Petitioner's immediate release would effectively bless Respondents' "detain first, justify later" approach, which entirely disregards § 1226(a)'s regulatory framework. *See, e.g.*, *Sanchez Sandoval v. Blanche*, No. 2:26-cv-01387-RFB-NJK, 2026 WL 1803675, at *4 (D. Nev. June 23, 2026); *see also E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[] received a prompt post-detention bond hearing under § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").

Moreover, many courts in this Circuit have ordered the immediate release of noncitizens like Petitioner who were unlawfully detained under § 1225(b)(2)(A) in violation of the INA. *See, e.g.*, *Sanchez Sandoval*, 2026 WL 1803675, at *3–4 (ordering immediate release of noncitizen whose detention under § 1225(b)(2)(A) violated the INA); *Rios-Rodriguez*, 2026 WL 2280924 at *9–12 (same); *Garcia-Gonzalez v. Larose*, No. 3:26-cv-04248-RBM-DDL, 2026 WL 2244058, at *2 (S.D. Cal. Aug. 4, 2026) (same); *Garcia v. Warden*, No. 1:26-cv-04456-KES-EGC (HC), 2026 WL 2268776, at *1 (E.D. Cal. Aug 6, 2026) ("This Court has typically ordered immediate release in petitioner's circumstances because respondents detained

petitioner based on their position that he was subject to mandatory detention under § 1225(b), and they did not assert a basis for petitioner's detention under § 1226(a).") (citing *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025)). Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy.

The Court also finds, based on Respondents' extensive history[6] of conduct with respect to these cases, that it must adopt additional equitable remedies to ensure that Respondents abide by the appropriate statutory authority, implementing regulations, and procedures.[7] *See United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to re-detain Petitioner under § 1226(a), Federal Respondents provide him with a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that the detainee presents a flight risk or a danger to the community such that detention is appropriate. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing where the government was required to "show by clear and convincing evidence that the

---

[6] Federal Respondents have engaged in a systemic pattern of noncompliance with orders issued by courts in this District in related habeas matters. These violations include, *inter alia*: removing petitioners from the District of Nevada after being ordered not to; failing to release petitioners as ordered; disregarding deadlines; failing to provide constitutionally adequate bond hearings; and imposing unlawful release conditions. *See, e.g.*, *Jimenez Gomez v. Dep't of Homeland Sec.*, No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples); *Rios-Rodriguez*, 2026 WL 2280924 at *11 n. 11 (collecting examples).

[7] The Court adopts this additional equitable remedy, in part, as a means of safeguarding Petitioner's due process rights. The Ninth Circuit has, when deciding a facial challenge to 8 U.S.C. § 1226(a) brought under the Fifth Amendment's Due Process Clause, recognized that § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty. *Rodriguez Diaz*, 53 F.4th at 1196. "[The Ninth Circuit] in fact cited § 1226(a)'s procedures as a reference point for what [the Ninth Circuit] believed should be required under [§§ 1225(b), 1226(c), and 1231(a)(6)]." *Id.* at 1202. Because Petitioner has also raised a due process challenge to his detention, the Court finds it appropriate to ensure that those rights are protected moving forward.

detainee presents a flight risk or a danger to the community."); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025) (describing *Martinez*). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' violations of the law and Petitioner's rights to date.[8]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention on his personal recognizance no later than **October 9, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **October 10, 2026,** to certify compliance with the Court's Order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its

---

[8] For example, Federal Respondents have admitted in open court that, as a matter of policy, they will not conduct initial custody determinations for noncitizens whose detention is governed by § 1226(a). (*See* Hr'g Tr. 17:22–20:10, *Jacobo Ramirez*, No. 2:25-cv-02136-RFB-MDC (D. Nev. June 1, 2026) (ECF No. 157).

implementing regulations. To the extent the government seeks to detain Petitioner under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this 8 day of October, 2026.

Gloria M. Navarro, District Judge
United States District Court